[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON OBJECTION TO ATTORNEY TRIAL REFEREE REPORT AND EXCEPTION TO ATTORNEY TRIAL REFEREE REPORT (DOCKET ENTRIES NOS. 127 AND 128) 
CT Page 12939
Before the court are the plaintiff's exceptions and objections to the report of the Attorney Trial Referee. The plaintiff alleges the following facts in his amended complaint filed on April 3, 1996. The plaintiff, Paul Tolk, is a real estate salesperson licensed in Connecticut. On October 25, 1989, Fischer Commercial Industrial Real Estate (Fischer Commercial)[1] entered into a written contract with the defendant, Edward Williams, giving Fischer Commercial the exclusive right to sell ";real estate owned by the defendant. The plaintiff signed the contract as Fischer Commercial's agent. According to the plaintiff, the contract complied with General Statutes § 20-325a and provided that the defendant would pay the plaintiff a commission of six percent of the selling price if the listing property was sold between October 25, 1989 and October 24, 1992. The plaintiff also alleges that Fischer Commercial assigned its interest in the contract to the plaintiff. The plaintiff contends that the defendant sold twenty four lots on the property during the relevant time period and that he is due a commission on each sale for a total of $162,447. In his twenty — four count complaint, the plaintiff seeks to recover these commissions plus interest.
The case was referred to an attorney trial referee. The attorney trial referee heard the case on April 25, 1997. On September 9, 1997, the attorney trial referee submitted a report containing the following finding of facts and conclusions of law: "(1) Plaintiff and defendant entered into several agreements in 1988 and 1989. Plaintiff's (Exhibit A) dated April, 1988 purports to be an employment agreement in which the plaintiff is described as a duly licensed real estate agent and sets forth the basis of compensation for the plaintiff's services and advice. . . . (2) Plaintiff's (Exhibit C) dated October 5, 1988, is an Exclusive Right To Sell Listing Contract between the defendant and Fischer Commercial effective from October 5, 1988 to October 4, 1989 signed by Paul Tolk as authorized representative. (3) Plaintiff's (Exhibit D) dated October 25, 1989 is an Exclusive Agency Listing Agreement between the defendant and Paul Tolk (Broker) from October 25, 1989 to October 24, 1992 signed by Paul Tolk as authorized listing agent for Fischer Commercial as broker agency name. By assignment of contract dated April 24, 1997 The Alan Fischer Companies d/b/a Fischer Commercial assigned to Paul Tolk all its interest in the attached Exclusive Agency Listing Agreement dated October 25, 1989 between it and Edward H. Williams (the defendant). No Exclusive Agency Listing Agreement was attached to the assignment. (4) Alan M. Fischer, a witness for the plaintiff, testified that he did not know or recall if any sales or commissions were paid to his firm between October 25, 1989 and October 24, 1992. He did not know if the plaintiff had any agreement with the defendant. He did not recall if he knew of the CT Page 12940 agreement plaintiff's (Exhibit D) (Listing between Williams and Paul Tolk (broker)). He testified that he agreed to assign the contract in 1995 (Exhibit J) for purposes of suit. Assignment plaintiff's (Exhibit J) is dated April 24, 1997. No consideration was paid for this assignment. Apparently, plaintiff made no claim for commissions due from the defendant prior to the filing of this action. (5) The defendant produced no witnesses to testify on his behalf. (6) At time of trial, the file was not available to the Attorney Trial Referee. This case was heard with only an amended complaint dated December 19, 1995[2] and a copy of the Defendant's Answer and Special Defenses to Plaintiffs complaint dated February 9, 1996. The amended complaint listed Twenty Nine Counts. First Count through Sixth Count were apparently withdrawn and Count Seven was referred to as Count One. The defendant's Answer and Special Defenses pleaded to all Twenty Nine Counts. (7) The Exhibits (Plaintiff's Exhibits A, B, C, D) are conflicting and disputed so the trier of fact may adopt whatever effect the Exhibits he believes to be credible. Exhibit A was introduced without any further testimony. It sets forth the basis on which costs for each lot in the development are computed. Exhibits B and C partially cover the effective date and expiration date. Exhibit D is the final Exclusive Agency Listing Agreement for a period from October 25, 1989 to October 24, 1992 wherein Paul Tolk is listed as "Broker" and also listed as "Designated Realtor or Authorized Representative." (8) The plaintiff did not introduce testimony that he was a licensed real estate broker or real estate salesman. Exhibits prior to exhibit D refers to the Plaintiff as a "real estate agent." CGS § 20-311 (1) (2). CGS § 20-325a (b) requires that any contract or authorization be signed "by the real estate broker or his authorized agent." The attorney trial referee recommended judgment for the defendant.
On December 3, 1997, the plaintiff filed a motion to correct the attorney trial referee's report.[3] On January 16, 1998, the attorney trial referee denied the motion to correct. On February 6, 1998, the plaintiff filed a motion for extension of time to file exceptions and objections to the acceptance of the attorney trial referee report and on March 6, 1998, the plaintiff filed his exceptions[4] and objections[5]. On March 19, 1998, the defendant filed a motion for judgment on the attorney trial referee's report. On March 30, 1998, the court, Skolnick,J., granted the motion, however, on September 14, 1998, the court,Skolnick, J., vacated this ruling. On April 15, 1998, the plaintiff filed a motion to reargue his exceptions and objections to the acceptance of the attorney trial referee report. The court, Skolnick, J., granted the motion to reargue on May 14, 2001. The plaintiff's exceptions and objections to the acceptance of the attorney trial referee report were heard by the court on May 14, 2001.
"Procedures before attorney state trial referees are governed by CT Page 12941 Practice Book §§ 434 through 444 [Practice Book (1998 Rev.) §§ 19-8 through 19-18]. Attorney trial referees are empowered to hear and decide issues of fact. . . . The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." (Citations omitted.) TDSPainting Restoration, Inc. v. Cooper Beach Farm, Inc., 45 Conn. App. 743,750-51, 699 A.2d 173, cert. denied, 243 Conn. 908, 701 A.2d 338 (1997) Section 19-16 (1998 Rev.) provides in part: "If exceptions or objections have been seasonably filed, the case should be claimed for the short calendar for hearing thereon; and the court may, upon the decision as to them, forthwith direct judgment to be rendered." Section 19-17 (1998 Rev.) provides in part: "(a) The court shall render such judgment as the law requires upon the facts in the report . . . If the court finds that the [attorney trial referee] has materially erred in its rulings . . . or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another [attorney trial referee] for a new trial or revoke the reference and leave the case to be disposed of in court."[6]
The procedure a party must follow in order to object to an attorney trial referee's report and the scope of a trial court's review thereof depends upon the portion of the report that is challenged. As to the attorney trial referee's findings of fact, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [now § 19-17]. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Meadows v.Higgins, 249 Conn. 155, 162, 733 A.2d 172 (1999). "[A] trial court cannot find additional facts or reject others unless a material fact has been found without evidence." TDS Painting Restoration v. Cower Beech Farm,
supra, 45 Conn. App. 751.
Practice Book § 23-58(a) provides: "After review of the finding of facts and hearing on any objections thereto, the judicial authority may CT Page 12942 take the following action: (1) render judgment in accordance with the finding of facts; (2) reject the finding of facts and remand the case to the fact finder who originally heard the matter for a rehearing on all or part of the finding of facts; (3) reject the finding of facts and remand the matter to another fact finder for rehearing; (4) reject the finding of facts and revoke the reference; (5) remand the case to the fact finder who originally heard the matter for a finding on an issue raised in an objection which was not addressed in the original finding of facts; or (6) take any other action the judicial authority may deem appropriate."
At the time the attorney trial referee's report was issued and the defendants' motions were filed in this case, a party contesting an attorney trial referee's findings of fact was required to file a motion to correct the report pursuant to Practice Book § 19-12[7] and then an exception to the report pursuant to Practice Book § 19-13.[8]
Section 19-13 (1998 Rev.) specifically provided, in part: "If a committee fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding. The court will not consider an exception unless its subject matter has been submitted to the committee in a motion to correct . . . nor will the court correct a finding of fact unless a material fact has been found without evidence or the committee has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear. A part.y excepting on these ground must file with the party's exception a transcript of the evidence taken before the committee, except such portions as the parties may stipulate to omit."[9]
In this case, the plaintiff patterned his exceptions to the attorney trial referee report on the matters he submitted to the attorney trial referee in his motion to correct. Specifically, the plaintiff argues that the attorney trial referee erred in failing to find that the following facts were admitted, undisputed or "found in such doubtful language that its real meaning does not appear:" (1) that the plaintiff brought this action as an assignee of Fischer Commercial; (2) that Fischer Commercial was a licensed real estate broker in 1989; (3) that the plaintiff was an authorized sales agent for Fischer Commercial at the time he signed the exclusive agency listing agreement; (4) that the defendant gave the plaintiff the right to designate the licensed broker for the listing agreement for the property with a six percent commission; (5) that during the time covered by the listing agreement, the defendant sold twenty one lots for a total amount of $3,463,957; (6) that the defendant did not pay Fischer Commercial any commission for any of those lots and the defendant failed to offer any evidence in support of his special defense of payment[10]; (7) that the defendant knew the plaintiff was a licensed CT Page 12943 Vreal estate agent in Connecticut; (8) that the agreement was "between Fischer Commercial and the defendant because it was properly signed and so indicated and (9) that the plaintiff testified he was a licensed real estate salesman.
The plaintiff's first and eighth exceptions are directed at conclusions of law and will not be considered in the context of this motion. As to the plaintiff's second exception, the evidence did establish that Fischer Commercial was a licensed real estate broker in 1989. (Transcript, p. 48-49; 53.) The absence of this fact, however, does not materially effect the trial referee's decision.
In his third exception, the plaintiff contends that the attorney trial referee erred in failing to find that the plaintiff was an authorizedsales agent for Fischer Commercial at the time he signed the exclusive agency listing agreement. The attorney trial referee found that the plaintiff signed this agreement as the authorized listing agent for Fischer Commercial. (See Finding of Facts, ¶ 3.) The plaintiff presented evidence that during the relevant time period he was a licensed salesperson and that he was authorized to enter into listing agreements on behalf of Fischer Commercial. (Transcript, p. 22-23; 48-49; 51-52.) This absence of fact, however, does not materially effect the attorney trial referee's decision. Therefore, this exception is denied.
In his fourth exception, the plaintiff claims that the attorney trial referee erred in failing to find that the defendant gave the plaintiff the right to designate the licensed broker for an exclusive listing agreement for the property with a six percent commission. In the employment agreement, the parties agreed that the defendant executed an exclusive listing agreement in favor of the plaintiff or a licensed broker designated by the plaintiff and that the commission shall be six percent of each sale. (Exhibit A, ¶ 2.) In the exclusive listing agreement between the parties, the defendant agreed to pay the plaintiff "as a fee for your services 6 % of the agreed upon sales price . . ." (Exhibit D.) These facts, however, do not materially change the attorney trial referee's conclusion because the pivotal issue is the plaintiff's status when he entered into the exclusive listing agreement. Therefore, this exception is denied.
In his fifth exception, the plaintiff claims that the attorney trial referee erred in failing to find that during the period of time covered by the exclusive agency listing agreement, the defendant sold twenty one lots for a total of $3,463,957. There is no support for this statement in the evidence. Indeed, the plaintiff testified that he recalled that the defendant sold twenty four lots and all the parties stipulated to this fact. (Transcript, p. 33-35.) Furthermore, neither of the witnesses CT Page 12944 testified as to the specific price paid for each lot or the total price paid for all the lots that were sold. The plaintiff's exhibit H contains a list of the price paid for each of the lots, however, the total amount paid according to this evidence is significantly different from the figure presented by the plaintiff. Therefore, this exception is denied.
In the sixth exception, the plaintiff claims that the attorney trial referee erred in failing to find that the defendant knew the plaintiff was a licensed real estate agent. The record does not contain any evidence regarding this fact. Moreover, the defendant did not testify. The attorney trial referee acknowledges this fact by stating that the defendant did not put forth a case. (Finding of Facts, ¶ 5.) Therefore, this exception is denied.
Lastly, the plaintiff argues that the attorney trial referee erred in failing to find that the defendant did not pay any commission to Fischer Commercial for any of the twenty one lots sold and in failing to find that the plaintiff testified he was a real estate agent. The attorney trial referee addressed the first issue in finding that Fischer Commercial did not recall if any commissions were paid to his firm. (Finding of Facts, ¶ 5.) This finding was supported by the evidence. (Transcript, p. 60.) As to the second issue, the evidence does support the plaintiff'5 contention that he testified that he was a real estate sales agent (Transcript, p. 10.) However, the absence of this finding does not materially effect that attorney trial referee's decision. In conclusion, the plaintiff's exceptions are denied and the facts found by the referee are accepted because the facts find support in the record and because any omissions thereto do not materially affect the attorney trial referee's recommendation.
At the time the defendants filed their objections, a party objecting to the attorney trial referee's conclusions of law was required to file an objection to acceptance of report pursuant to Practice Book § 19-14. At that time, § 19-14 stated: "(a) A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted. (b) If an objection raises an issue of fact the determination of which may require the consideration of matters not appearing in the report or stenographic notes of proceedings before the committee, the adverse party shall, within two weeks after the filing of the objection, file a statement raising such issue." When a party contests an attorney trial referee's legal conclusions, the court "must determine whether [legal conclusions] are legally and logically correct and whether they find support in the facts found by the [attorney trial] referee." CT Page 12945 (Internal quotation marks omitted.) Villano v. Polimeni, 54 Conn. App. 744,747-748, 737 A.2d 950, cert. denied, 251 Conn. 908, 739 A.2d 264 (1999)
The plaintiff contends therein that the attorney trial referee report should not be accepted because: "(1) the plaintiff filed exceptions to the report which have not been heard by the court; (2) the attorney trial referee, in reaching his conclusion in paragraph eight, made an untenable distinction between the term licensed real estate salesman and licensed real estate agent or ignored the actual testimony on this issue; (3) the conclusions of the trial referee, if any, in regard to the validity of the exclusive listing agreement, (the plaintiff's Exhibit D) is not properly reached based upon the subordinate facts found in paragraph three and paragraph eight which seem to infer that the agreement was not signed by an authorized agent. Yet, there are no other findings or facts set out that concludes or allows for a conclusion that the plaintiff was or was not authorized to sign the agreement; (4) the trial referee refers to the wrong complaint in his report, the actual complaint was the amended complaint dated April 2, 1996, and subsequently amended by a request filed on April 21, 1997 and granted by the trial referee at the time of trial and (5) the trial referee's findings are contrary to the actual testimony in regard to several essential facts, as set forth in the plaintiff's exceptions to the report."
As to the plaintiff's first objection, the court will not rule on it on the ground that it was addressed above and does not refer to a conclusion of law. In his second objection, the plaintiff objects to the acceptance of the attorney trial referee report on the ground that the attorney trial referee made an untenable distinction between the term licensed real estate salesman and licensed real estate agent. General Statutes § 20-311 (2) defines a real estate salesman as: "a person affihated with any real estate broker as an independent contractor or employed by a real estate broker to list for sale, sell or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate. . . ." General Statutes § 20-311 (8) defines a designated seller agent as: "a broker or salesperson designated by the real estate broker with whom the broker or salesperson is affihated or employed to solely I represent a named seller or landlord client of the real estate broker during the term of a listing agreement or authorization."
The courts of Connecticut do not specifically address whether real estate agent and real estate salesperson are distinct professions. In a footnote the Appellate Court has stated that "[t]he term `real estate agent' was apparently intended to be synonymous with the real estate "broker' or real estate `salesman.'" State v. Miller, 34 Conn. App. 250,261 n. 5, 641 A.2d 400 (1994). In this case, the attorney trial referee did not distinguish whether the plaintiff was a real estate salesperson CT Page 12946 or a real estate agent, but used the terms interchangeably. The crucial distinction the attorney trial referee made in this regard was that the plaintiff did not introduce any evidence that he was a licensed real estate broker. Indeed, the plaintiff admitted that he was not so licensed. (Transcript, p. 22.) Therefore, this objection is overruled.
As to the third objection, the plaintiff objects to the attorney trial referee's conclusion because it appears to be based on findings regarding whether the validity of the exclusive listing agreement was signed by an authorized agent of Fischer. General Statutes § 20-235a (b) governs actions to recover commissions arising out of real estate transactions and provides in pertiment part: "No person, licensed under the provisions of this chapter, shall commence or bring any action with respect to any acts done or services rendered after October 1, 1995 . . . unless the acts the acts or services were rendered pursuant to a contract or authorization from the person for whom the acts were done or services rendered. To satisfy the requirements of the subsection any contract or authorization shall: (1) Be in writing, (2) contain the names and addresses of the real estate broker performing the services and the name of the person or persons for whom the acts were done or services rendered, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization, (5) be signed by the real estate broker or the real estate broker's authorized agent . . . and (7) be signed by the person or persons for whom the acts were done or services rendered or by an agent authorized to act on behalf of such person or persons, pursuant to a written document executed in the manner provided for conveyances in section 47-5 . . ." (Emphasis in original.)
"It is well established that the requirements of § 20-325a (b) are mandatory rather than permissive and that the statute is to be strictly construed. . . . A broker who does not follow the mandate of [§ 20-325a
(b)] does so at his peril . . . "[11] (Construing § 20-325a (b) before it was amended.) (Citations omitted; internal quotation marks omitted.) Rapin v. Nettleton, 50 Conn. App. 640, 648, 718 A.2d 509
(1998).
The plaintiff testified that he completed the exclusive listing agreement. In doing so in paragraph one, the plaintiff stated that he was the broker. In the signature portion of the document, the plaintiff listed Fischer Commercial as the broker and he signed the document as Fischer's authorized listing agent and as the designated realtor or authorized realtor. The plaintiff did testify about the role he played in the listing agreement and explained that he was acting on behalf of Fischer and did not fill in the document correctly when he named himself as the broker. (Transcript, p. 23.) The attorney trial referee expressed CT Page 12947 his view on this issue at trial and stated: "Well, this is the exclusive right, a listing agreement from Williams to Paul Tolk, broker, your right to sell. And you've signed this Fischer Commercial as broker. And you're the authorized listing agent. But this is not an agreement between Mr. Williams and Fischer Commercial. It's an agreement between Williams and you. . . . As I read this document." (Transcript, p. 22.) The attorney trial referee is entitled to make a credibility determination as a fact finder. This objection is an issue of credibility that the court can not review and, therefore, this objection is overruled.
In the fourth objection, the plaintiff objects to the report because the attorney trial referee referred to the wrong complaint. In the report, the attorney trial referee stated that he heard the case on the amended complaint dated December, 1995, because at the time of trial, the file was not available to him. As stated previously with the exception of several counts that were withdrawn, the amended complaint dated December 19, 1995, was essentially identical to the operative complaint.[12]
Therefore, this objection is overruled.
In the last objection, the plaintiff generally objects to the attorney trial referee's conclusion on the ground that the attorney trial referee findings are contrary to the actual testimony in regard to several essential facts as set forth in the plaintiff's exceptions to the report. This objection is not sufficiently specific for the court to determine its basis. Therefore, this objection is overruled.
The recommendations of a referee should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Wilcox Truckine, Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 425, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804,573 A.2d 318 (1990). The court has found no material error in the referee's report nor has the court found any other "sufficient reasons why the report should not be accepted." Practice Book § 19-17(a). Therefore, the report is accepted and judgment enters in favor of the defendant.
SKOLNICK, J.